Argued and submitted September 8, accused found not guilty November 2, 1982

In re: Complaint as to the Conduct of
# J. ROBERT JORDAN,
*Accused.*

## (OSB 81-2, SC 28527)
652 P2d 1268

Frank Pozzi, Portland, argued the cause and submitted the brief for the accused. With him on the brief was Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

Paul J. Kelly, Jr., Portland, argued the cause for the Oregon State Bar. With him on the brief was Glasgow & Kelly, P.C., Portland.

PER CURIAM

## PER CURIAM

The Oregon State Bar filed a complaint against J. Robert Jordan accusing him of unethical conduct. The complaint alleged that Jordan, who represented the petitioner-wife in a contested suit for the dissolution of a marriage, obtained an ex-parte order restraining the respondent-husband without any notice to opposing counsel and without contemporaneously providing a copy of the order to opposing counsel. The conduct was alleged to be in violation of DR 7-110(B) of the Code of Professional Responsibility.[1]

Both the Trial Board and the Disciplinary Review Board found Jordan not guilty. We find Jordan not guilty.

The facts are essentially undisputed. On September 11, 1980, Jordan, representing the wife, filed a petition in Multnomah County for the dissolution of her marriage. As additional relief, the wife asked for the custody of two female children (ages 6 years and 15 months), support for the children and herself, and the division of the assets and liabilities. The wife in an "affidavit for restraining order" swore the respondent-husband had become addicted to the excessive use of alcoholic liquor, had physically assaulted her with increased frequency, and had rendered the home dangerous to her and the minor children by his increased violent disposition. On the same day an order was entered

---

[1] DR 7-110(B) provides as follows:

"(B) In an adversary proceeding, a lawyer shall not communicate, or cause another to communicate, as to the merits of the cause with a judge or an official before whom the proceeding is pending, except:

"(1) In the course of official proceedings in the cause.

"(2) In writing if he promptly delivers a copy of the writing to opposing counsel or to the adverse party if he is not represented by a lawyer.

"(3) Orally upon adequate notice to opposing counsel or to the adverse party if he is not represented by a lawyer.

"(4) As otherwise authorized by law or by Section A(4) under Canon 3 of the Code of Judicial Conduct."

The complaint also alleged that Jordan's conduct was in violation of DR 7-106(C)(5).

The Bar's brief in this court conceded that there was "insufficient evidence in the record to support the allegation that" Jordan's conduct violated DR 7-106(C)(5).

requiring the husband to vacate the family residence and restraining him from harassing or contacting the wife. A second order was entered setting a show cause hearing on the custody and support matters.

On September 25, 1980, the show cause order came on for hearing before a different judge. Jordan told the judge "things have calmed down considerably" and that the wife wished to withdraw that part of the restraining order which prevented the husband from returning home, but wanted to "continue the order restraining him from harming or harassing her." The husband's lawyer wanted the restraining order removed immediately. The judge, after exacting a promise from the husband that he would not "beat up" the wife, dissolved the restraining order. The custody and support matters were resolved by stipulation.

On September 26, 1980, the husband, through his attorney, filed a response to the petition for dissolution.

On Friday morning, November 7, 1980, the wife called Jordan by telephone and in the afternoon of the same day she went to his office. Jordan testified that the wife was "almost hysterical" and gave him some new information about the husband. The wife told Jordan that the principal of the six-year-old girl's school had called and said that the Gresham police had picked up the girl.

After verifying that the girl was there, Jordan advised the wife to go to the Gresham police department and demand the return of the child. The girl was returned to the wife with a warning by both the Children's Services Division and the police that she should leave her home immediately to protect herself and the children from the husband.

Also, on November 7, 1980, the wife executed an affidavit which Jordan had prepared to obtain a second restraining order. The affidavit alleged that within the last month the husband had: (1) falsely accused the wife of having performed various unnatural sex acts; (2) started coming home during his working hours to check on the wife's conduct; (3) attempted to rape the wife; (4) falsely accused the wife of being a lesbian and having sexual relations with the children; (5) as a part of his irrational

behavior, pretended that the wife had a desire to kill him, and (6) on November 6, 1980 filed ridiculous charges against the wife with the Children's Services Division causing the Gresham police department to remove the six-year-old girl from school and take her to the police station.

On Monday, November 10, 1982, Jordan filed the motion and affidavit and presented the second restraining order to a third Circuit Judge. This was done *ex parte,* even though Jordan knew the husband was represented by a lawyer. There is no testimony in the record as to what Jordan told the Circuit Judge when he presented the order.

The second restraining order was signed by the Circuit Judge on November 10, 1980. It required the husband to move out of the family home, restrained him from harming the wife and children, set a show cause hearing for November 21st, and set bail for each violation of the order at $5,000.

November 11th was a holiday. The husband was served with the second restraining order on November 12, 1980, and on the same day called and fired his attorney. Sometime between November 12th and 14th the husband's lawyer called Jordan to complain that the restraining order had been obtained *ex parte* and to request a copy of the order. Jordan's letter forwarding a copy of the order to husband's attorney was dated November 17th. The certification that the order was a true copy was dated November 18th. The envelope enclosing the letter and the order was postmarked November 19th and the husband's lawyer testified that he received it on November 20th.

On November 21, 1980, at the show cause hearing, the husband's lawyer and his partner were allowed to withdraw as attorneys of record.[2] On November 26, 1980, the husband's lawyer's partner filed a complaint of Jordan's conduct in letter form with the Oregon State Bar.

There are two issues in this case. Did Jordan violate DR 7-110(B) by: (1) seeking and obtaining the November 10, 1980 restraining order without prior notice to

---

[2] To close the chapter on the dissolution of marriage petition it should be noted that a decree dissolving the marriage was entered on July 21, 1981.

the husband's lawyer, and (2) waiting until November 12th to November 14th to discuss the order with husband's lawyer and waiting until November 19th to mail a copy of the order to the husband's lawyer?

The Trial Board found Jordan not guilty of violating the disciplinary rules in obtaining the *ex parte* restraining order because former ORS 32.050 did not prohibit obtaining the order without notice and the "local custom or practice permitted the obtaining of a restraining order without notice under extreme circumstances." On the question of the timeliness of Jordan notifying the husband's lawyer that the restraining order had been obtained the Trial Board stated it could not find a violation upon the evidence before it.

The Disciplinary Review Board agreed with the recommendation of the Trial Board that the complaint against Jordan should be dismissed.

Jordan in this court argues that the *ex parte* contact with the judge was: (1) not on the merits of the cause, or (2) authorized under former ORS 32.050 and therefore excepted from the disciplinary rule under DR 7-110(B)(4). The Oregon State Bar counters by arguing that the *ex parte* contact was on the merits and that former ORS 32.050 did not apply to domestic relations matters.

■     DR 7-110(B), as it applies to this case and when stripped of its inapplicable language, in effect provides that in an adversary proceeding a lawyer shall not, without notice to opposing counsel, communicate as to the merits of the cause with a judge before whom the proceeding is pending, except as otherwise authorized by law.

Former ORS 32.050 was in effect at the time in question and provided:

> "An injunction shall not be allowed after the defendant has answered, except upon notice, but in such case the defendant may be restrained until the decision of the court or judge allowing or refusing the injunction; and before answer, if the court or judge deems it proper that the defendant should be heard before allowing an injunction, an order may be made requiring the defendant to show cause, at a specified time and place, why the injunction

should not be allowed; and in the meantime the defendant may be restrained."

Former ORS 32.050 was enacted by the legislature in 1862 and remained in the above form until it was repealed on January 1, 1982. Deady's Code § 408 (1862); Oregon Laws 1981, Chapter 898. There is no legislative history available. There are no cases from this court which interpret the restraining order provisions of the former statute. No doubt, the reason is that a restraining order is not a final order and therefore not appealable under ORS 19.010.

Dobbs, *Handbook of Law Remedies,* § 2.10 at 107 (1973) defines a temporary restraining order as follows:

"The temporary restraining order is an *ex parte* injunction. That is, it is an injunction granted without notice to the defendant."

*See also* 42 Am Jur2d *Injunctions* §§ 9, 14 and 264.

The Oregon State Bar cites ORS 107.095 as giving domestic relations courts specific authority to enter orders after the commencement of suit and before decree restraining one party from molesting or interfering with the other or their minor children and argues that former ORS 32.050 did not apply to the limited jurisdiction domestic relations courts. ORS 107.095 only authorizes the court to enter the restraining order. Former ORS 32.050 provided the procedure. The statutes must be read together. This is confirmed by former ORS 32.020(3) which provides that no undertaking shall be required to "protect a person from violent or threatening behavior." If domestic relations cases were to be excluded, the statute would so state.

We think that a fair reading of former ORS 32.050 allowed the court to enter a restraining order without notice after the answer had been filed. No one has suggested that a restraining order can be anything but temporary. The former statute made a distinction between injunctions and restraining orders. It made no distinction between domestic relation cases and all other cases.

It necessarily follows that Jordan was authorized by the law in force at that time to obtain the *ex parte* order and therefore he was not in violation of DR 7-110(B).

Because of the result we reach in this case we find it unnecessary to consider if Jordan's contact with the judge was "on the merits."

We point out to the parties and the Bar in general that former ORS 32.050 has been replaced by ORCP 79B. effective January 1, 1982:

"B.  Temporary Restraining Order.

"B.(1) Notice. A temporary restraining order may be granted without written or oral notice to the adverse party or to such party's attorney only if:

"B(1)(a) It clearly appears from specific facts shown by affidavit or by a verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or the adverse party's attorney can be heard in opposition, and

"B.(1)(b) The applicant or applicant's attorney submits an affidavit setting forth the efforts, if any, which have been made to notify defendant or defendant's attorney of the application, including attempts to provide notice by telephone, and the reasons supporting the claim that notice should not be required. The affidavit required in this paragraph shall not be required for orders granted by authority of ORS 107.095 (1)(c), (d), (e), (f) or (g).

"B.(2) Contents of order; duration. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance, shall be filed forthwith, shall define the injury and state why it is irreparable, and shall state why the order was granted without notice."[3]

The legislative history does not indicate that this clear intention to include domestic relations restraining orders was considered in any way a change from the existing law.

■    The Oregon State Bar also charges Jordan with causing the "restraining order to be served on (the

---

[3] The parties have called our attention to the fact that on October 19, 1981, the Department of Domestic Relations for Multnomah County issued new rules which include rule 10.15:

"No ex parte order shall be presented in court by any litigant or attorney where such litigant or attorney knows or has reason to know that the opposing party is represented by counsel. An attorney requesting ex parte relief must provide reasonable notice to opposing counsel of the date, time and court where the ex parte relief will be sought."

husband) without contemporaneously providing notice or a copy thereof to opposing counsel" in violation of DR 7-110(B). This charge simply does not fit DR 7-110(B). That rule does not place upon the lawyer a duty to provide notice or a copy to opposing counsel. The Bar argues that Jordan was in violation of ORCP 9A. The problem with that argument is that Jordan was not charged in the complaint with violating ORCP 9A,[4] even though the rule was in effect on November 10, 1980.

For the above reasons, we find Jordan not guilty and order the complaint filed against him by the Oregon State Bar be dismissed.

Costs awarded to accused.

---

[4] ORCP 9A.

"A. Service; when required. Except as otherwise provided in these rules, every order, every pleading subsequent to the original complaint, every written motion other than one which may be heard ex parte, and every written request, notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 7."